```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

FELTON WOODS,                     )
                                  )
                 Plaintiff,       )
                                  )
         v.                       )
                                  )
FANTASIA EDMONDS, in her          )
individual and official           )
capacities; ATTORNEY JANE DOE,    )
in her individual and official    )    1:23-CV-780
capacities; ALEXANDER             )
STEVENSON REAMS II and            )
ALEXANDRIA STEPHANIE REAMS,       )
Co-Administrators of the          )
estate of STEPHANIE REAMS, in     )
her individual capacity;          )
STEPHANIE REAMS (or her           )
successor) in her official        )
capacity; MAGGIE CVETICANIN,      )
in her official capacity; and     )
AMINAH THOMPSON, in her           )
official capacity,                )
                                  )
                 Defendants.      )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

In a dispute over the adoption placement of two minor children, Plaintiff Felton Woods contends that he was denied his constitutional right of access to the courts when Defendants delayed filing his state court adoption petitions for his two great-grandchildren, K.T. and M.T., for two weeks. (Doc. 1.) Woods seeks a declaratory judgment and damages under 42 U.S.C § 1983. (Id.) Presently before this court are the motions to dismiss filed by Defendants Maggie Cveticanin and Fantasia Edmonds

(collectively the "Durham County Defendants") (Doc. 11) and Defendants Stephanie Reams and Aminah Thompson (collectively the "County Clerk Defendants") (Doc. 13). In addition, the Attorney General filed a notice of death as to Defendant Stephanie Reams (Doc. 22), who died after the filing of the complaint, and Woods has moved to substitute the co-administrators of her estate for her place (Doc. 25). Woods also moves to strike briefing filed on Reams's behalf on the ground that counsel lacked any authority to do so since Reams was deceased at the time of the filing. (Doc. 26.)

Defendants raise myriad challenges to Woods's complaint, including standing, the Eleventh Amendment, judicial immunity, qualified immunity, and the applicability of the constitutional right of access to the filing of state adoption petitions. But the ultimate inquiry is simple: because the County Clerk Defendants are state officials entitled to official immunity, and because Woods has failed to plead facts that plausibly allege a violation of his constitutional right of access to the courts, the court will grant both motions to dismiss without prejudice. The court will also grant Wood's motion to substitute but deny Woods's motion to strike.

I.    **BACKGROUND**

   A.   **Factual Background**

   For the purposes of these motions, the facts alleged in the

2

complaint (Doc. 1) are taken as true and set out the following:

Plaintiff Woods is a resident of Georgia and is the great-grandfather to K.T. and M.T., who are minors. (Id. ¶ 15.) The guardianship of K.T. and M.T. has been in dispute for several years. (Id. ¶ 24.) The two children entered foster care in North Carolina at the direction of the Durham County Department of Social Services ("DSS") on January 5, 2018, after their mother, Jatoia Potts, gave birth to K.T. in the state in August of 2017 and remained in the state due to K.T.'s need for inpatient neonatal intensive care. (Id. ¶ 28.)[1] Throughout this time, Woods and other relatives consistently made clear to DSS that they were willing to provide a kinship home for the children. (Id. ¶¶ 15, 30.) DSS, however, consistently thwarted the families' efforts to secure a familial placement. (Id. ¶ 15; see also id. ¶¶ 32-37 (describing the placement of the children with a non-kin foster family in a "foster-to-adopt" scenario), 38-62 (describing DSS's mishandling of familial rights via issues with filing paperwork under the Interstate Compact on the Placement of Children).)

On February 3, 2023, Woods, through an agent, delivered petitions for adoption for K.T. and M.T. to the Special Proceedings office of the Durham County Clerk of Court, along with the filing

---

[1] Potts's parental rights were terminated after K.T. had suffered head trauma, seizures, blood loss, possible fractures, retinal hemorrhages in both eyes, and other "nonaccidental, life-threatening injuries." In the Matter of M.T. and K.T., 877 S.E.2d 732 (N.C. App. 2022) (affirming termination of parental rights based on neglect and abuse).

fee for those petitions. (Id. ¶ 64.) The petitions were accepted by the clerk's office. (Id.) Later that same day, however, Defendant Stephanie Reams, an assistant clerk employed by the Durham County Clerk of Court, telephoned Woods's counsel and reported that the non-kin foster parents had also filed petitions for the adoption of the two children on January 27, 2023. (Id. ¶ 65.) Reams stated that she had called the DSS social worker, Defendant Fantasia Edmonds, about the case and intended not to file Woods's petitions as a result of their conversation. (Id.) In response, Woods's counsel said she would follow up the next week, and she served both paper and electronic copies of the adoption petitions on the attorney for DSS the same day. (Id. ¶¶ 65-66.)

Over the next several days, the clerk's office continued to take no action on Woods's adoption petitions. On February 9, a legal assistant for Woods's counsel called the clerk's office to ask about the petitions and was informed that DSS was "doing an investigation on it" and "the attorney for DSS is also looking into it," so the clerk's office was "not going to file [Woods's] petition[s]." (Id. ¶ 67.) Woods's counsel exchanged emails with the attorney for DSS on February 10, 2023, who denied ever advising the Clerk of Court in the matter, or any matter. (Id. ¶¶ 68-69.) That same day, Woods's counsel telephoned the Special Proceedings division of the Clerk of Court's office again and spoke with Reams,

4

who stated that she had spoken to both the DSS Social Worker, Edmonds, and an unidentified "county attorney" from the "juvenile" section about the matter, again asserting that those individuals told her they were investigating the matter and that the clerk's office would not be filing the petitions until DSS told them what to do.[2] (Id. ¶ 70.)

Having made no progress toward getting his petitions filed, Woods initiated a lawsuit on February 15, 2023, in Durham County Superior Court seeking a writ of mandamus against the Clerk of Court, Defendant Aminah Thompson, and the Interim Director of DSS, Sarah Bradshaw, requesting, inter alia, an order compelling the clerk's office to stamp and file his adoption petitions for K.T. and M.T. (Id. ¶ 11.) The next day, February 16, 2023, another employee from the clerk's office called and informed Woods's counsel that his adoption petitions were technically deficient because they lacked a wet (original) signature. (Id. ¶ 12.) Upon being made aware of this, Woods sent original signature pages via overnight delivery to the Special Proceedings office. (Id. ¶ 13.) The corrected pages were received on February 17, 2023, and they were then stamped and duly filed by the clerk's office that day. (Id. ¶ 14.)

---

[2] The transcript of this recorded phone call is attached to and incorporated into Woods's complaint. (Doc. 1-1 (affidavit of Elizabeth Simpson with transcript of phone call).)

## B. Procedural History

Woods filed the present complaint on September 11, 2023, alleging that the Durham County Clerk of Court and DSS violated his constitutional right of access to the courts by refusing to file, or delaying the filing of, his adoption petitions and seeking redress pursuant to 42 U.S.C. § 1983. (Id.) Woods names five Defendants: Edmonds, the social worker employed by DSS, in her individual and official capacities; Attorney Jane Doe, the attorney allegedly employed by the "juvenile section" of Durham County, in her individual and official capacities;[3] Reams, an assistant clerk employed by the Durham County Clerk of Court, in her individual and official capacities; Cveticanin, the current director of DSS who has "supervisory authority over the acts and omissions of Durham DSS," in her official capacity only; and Thompson, the Durham County Clerk of Court who has "supervisory authority over the acts and omissions of the Durham Office of the Clerk of Court," in her official capacity only. (Id. ¶¶ 16-20.) Woods seeks a declaration that all of the Defendants, acting in their official capacity, engaged in an unlawful and unconstitutional delay in filing his petitions, and he seeks compensatory and punitive damages from Defendants Reams, Edmonds, and Doe in their individual and official capacities. (Id. at 20-

---

[3] Attorney Jane Doe is not a party to either of the motions to dismiss, as her identity or even existence has yet to be confirmed.

21.)

The Durham County Defendants and County Clerk Defendants now move to dismiss all claims. (Docs. 11, 13.) Those motions have been fully briefed. (Docs. 12, 14, 17, 18, 23, 24.) Thereafter, Woods filed two motions in response to the Notice of Reams's death (Doc. 22): one to substitute Alexander Stevenson Reams II and Alexandria Stephanie Reams, co-administrators of the estate of Stephanie Reams (the "Co-Administrators"), as a party in place of Reams (Doc. 25); and one to strike any briefing related to Reams that the County Clerk Defendants filed (Doc. 26). Neither of Woods's motions was accompanied by a brief. The County Clerk Defendants filed a response to both motions (Doc. 30 (motion to substitute); Doc. 31 (motion to strike)), and Woods failed to file a reply to either. All motions are therefore ripe for review.

## II. ANALYSIS

### A. Motion to Substitute

Woods moves pursuant to Federal Rule of Civil Procedure 25(a)(1) to substitute the Co-Administrators for Defendant Reams, who is deceased. (Doc. 25.) According to Woods, survival of claims pursuant to 42 U.S.C. § 1983 is governed by 42 U.S.C. § 1988, which looks to the state law of survivorship to determine whether substitution in the case of death is appropriate. (Id. ¶ 4.) As North Carolina law provides for survivorship of all claims except for causes of action (1) for libel or for slander,

7

(2) for false imprisonment, or (3) where "the relief sought could not be enjoyed, or granting it would be nugatory after death," Woods maintains that the claims against Reams survive, and he moves to substitute in the Co-Administrators in recognition of this. (Id. ¶ 5 (quoting N.C. Gen. Stat. § 28A-18-1(b)).)

The County Clerk Defendants oppose this motion, asserting that the court's decision whether to grant the motion is discretionary and arguing that the court should decline to exercise its discretion here. (Doc. 30 at 1-2.) They argue that substitution of the Co-Administrators for Reams in her official capacity is improper because Reams' successor in the county clerk's office has taken her position in the litigation automatically pursuant to Rule 25(d), as Reams was serving as a public official. (Id. at 2-3.)[4] As to the individual capacity claim against Reams, the County Clerk Defendants argue that the Co-Administrators cannot be substituted insofar as Woods seeks punitive damages under North Carolina law (id. at 3), and the remaining claims are nugatory (id. at 4-7). Finally, the County Clerk Defendants

---

[4] In their brief's heading, the County Clerk Defendants argue that "Plaintiff's official capacity claims against Ms. Reams were extinguished upon her retirement and subsequent death." (Doc. 30 at 2.) However, their argument focuses on the automatic substitution of Reams's successor as Assistant Clerk of Court rather than on any termination of the claims against her resulting from her death. (See id. at 2-3.) Therefore, the court construes the County Clerk Defendants' argument to be that the claims against Reams in her official capacity were "extinguished" only to the extent that they have already passed and attached to Reams's successor.

8

contend that the balance of equities disfavors substitution, as any judgment against Reams in her individual capacity would be paid by the State of North Carolina and not by her estate, substitution is inconsistent with the purpose of § 1983, the Co-Administrators are not in a position to provide evidence in defense of Reams, and the court's jurisdiction over the complaint remains dubious. (Id. at 7-10.)

The court will allow the substitution of the Co-Administrators, but only as to individual capacity claim against Reams. As to the official capacity claims against Reams, the County Clerk Defendants are correct that Rule 25(d) governs, and the substitution of Reams's successor was automatic. See F. R. Civ. Pro. Rule 25(d) ("The officer's successor is automatically substituted as a party."). The estate is therefore not the proper party to take her position with respect to those claims. Rather, the court is authorized to order the successor to be identified and named appropriately in later proceedings. See id. ("The court may order substitution at any time, but the absence of such an order does not affect the substitution.") In the meantime, the court may proceed on the official capacity claims noting that "Reams" is a mere misnomer for the person presently operating as her successor. See id. ("Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may

9

order substitution at any time, but the absence of such an order does not affect the substitution.")

As to the individual capacity claim against Reams, Woods is correct that the Co-Administrators can and should be substituted. When a defendant dies during the pendency of an individual-capacity action, the estate is the proper party to take the decedent's place if one is to be substituted. See Kentucky v. Graham, 473 U.S. 159, 166 n.11 (1985). Moreover, survivorship of a § 1983 claim rests on state law, and North Carolina's default rule provides for liberal survivorship of claims in all but a very few instances. N.C. Gen. Stat. § 28A-18-1(a). Though the County Clerk Defendants argue that this is a situation where any damages granted would be "nugatory," this misunderstands that exception. The North Carolina Court of Appeals has defined "nugatory" by its common definition in Black's Law Dictionary: "of no force or effect, useless, invalid." In re Higgins, 587 S.E.2d 77, 78 (N.C. App. 2003). In operation, this exception has been invoked only in situations where the remedy sought became nonsensical or impossible after a party's death – for example, where one spouse dies during the pendency of an action pursuing a divorce decree and dissolution of marriage, or in petitions for guardianship where the incompetent adult whose authority was at issue dies during the pendency of the action. See Elmore v. Elmore, 313 S.E.2d 904 (N.C. App. 1984) (divorce); In re Higgins, 587 S.E.2d at 78-79

10

(guardianship). Moreover, "North Carolina courts have only applied th[e] § 28A-18-1(b)(3) [nugatory] exception to prospective remedies." McGill v. Town of Coats, No. 5:12-CV-631-FL, 2013 WL 953929 at *5 (E.D.N.C. Mar. 12, 2013) (citing Brown v. Town of Cary, 706 F.3d 294, 300 (4th Cir.2013)); see also McGowen v. Rental Tool Co., 428 S.E.2d 275, 276 (N.C. App. 1993) (allowing a suit for retrospective personal injury to survive under North Carolina survival statute). By contrast, Woods seeks only retroactive monetary damages against Reams in her individual capacity, which her estate can provide in the event Woods's claim proves meritorious.[5] Substitution of the parties therefore would not be nugatory, and because North Carolina policy supports liberal survival of claims, substitution is heavily favored.

Woods's motion to substitute the Co-Administrators for the individual capacity claim against Reams will therefore be granted, and the Co-Administrators are substituted as to any individual capacity claim against her.

## B. Motion to Strike

Woods also moves to strike all briefing filed on Reams's

_____

[5] The County Clerk Defendants' brief focuses on the fact that there is no merit to Woods's claim for damages, as his punitive damages claim is barred and he has not alleged any actual injury that would entitle him to compensation under § 1983, which they argue renders the claims nugatory. (Doc. 30 at 4, 6-7.) However, the merits of the claim for the requested relief have no bearing on the analysis; it is "the purpose or the desired end result of a proceeding" assuming the merits on which the analysis turns. In re Higgins, 587 S.E.2d at 78 (emphasis added).

behalf on the ground that she was deceased at the time those papers were filed. (Doc. 26.) At the outset, the court notes - as do the County Clerk Defendants - that Federal Rule of Civil Procedure 12(f) provides that a court "may strike <u>from a pleading</u> an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). Because the County Clerk Defendants' motion to dismiss is not a pleading, the motion to strike is improper and will be denied.[6]

Even if the court were to consider Woods's motion to disregard the arguments made on Reams's behalf on the merits of that request, it would still warrant denial. Woods argues that counsel for the County Clerk Defendants lacked the authority to file any motion or brief on Reams's behalf because Reams was deceased at the time of filing and her death terminated any lawyer-client relationship between the two. (Doc. 26 ¶¶ 2-7.) The County Clerk Defendants disagree, noting that the Attorney General's office represents them in this matter, and they contend that the lawyer-client relationship with Reams persists given the Attorney General's statutory obligation to defend her as an employee of the state. (Doc. 31 at 4-6.)

The County Clerk Defendants are correct. Pursuant to North

---

[6] Woods's motion to strike also violates Local Rule 7.3(j), which excuses the requirement of a brief in only a limited set of motions, and a motion to strike is not one of them. This, too, is grounds to deny the motion.

Carolina General Statute § 114-4(2), the Attorney General has a duty to defend arms of the state in litigation such as this. <u>See</u> N.C. Gen. Stat. § 114-2(2) ("Pursuant to Section 7(2) of Article III of the North Carolina Constitution, it shall be the duty of the Attorney General: . . . [t]o represent all State departments, agencies, institutions, commissions, bureaus or other organized activities of the State which receive support in whole or in part from the State.") That duty includes representing the state judiciary, of which the County Clerk's office is a subdivision, in claims made against it and the duty to defend individual state employees in their official and individual capacities who seek representation in litigation relating to their work. <u>See</u> N.C. Gen. Stat §§ 143-300.3, 143-300.5. The Attorney General was authorized to file the briefing on Reams's behalf. Therefore, the court can and will consider any arguments raised therein.

### C. Motions to Dismiss

#### 1. Standard of Review

The motions to dismiss raise challenges to both the court's jurisdiction and the sufficiency of the complaint.

As to jurisdiction, federal district courts are limited in their exercise of judicial power. <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 552 (2005). Challenges to the court's subject matter jurisdiction at this stage are addressed under Federal Rule of Civil Procedure 12(b)(1). <u>CGM, LLC v. BellSouth</u>

13

Telecomms., Inc., 664 F.3d 46, 52 (4th Cir.2011); see also Pitt Cnty. v. Hotels.com, L.P., 553 F.3d 308, 311 (4th Cir. 2009) (noting district court's re-characterization of defendant's challenge to standing from a motion to dismiss for failure to state a claim under Rule 12(b)(6) to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)).  When resolving a motion under Rule 12(b)(1), "'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'"  Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)).  Where a defendant has not provided evidence to dispute the veracity of the jurisdictional allegations in the complaint, the court accepts facts alleged as true just as it would under Rule 12(b)(6).  Kerns v. United States, 585 F.3d 187, 192-93 (4th Cir. 2009) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).  In addition, the court assumes the truth of the facts augmented by a plaintiff's affidavits.  Fair Hous. in Huntington Comm., Inc. v. Town of Huntington, N.Y., 316 F.3d 357, 362 (2d Cir. 2003).  Ultimately, however, the plaintiff bears the burden of "clearly . . . alleg[ing] facts demonstrating that he is a proper party to invoke judicial resolution of the dispute."  Warth v. Seldin, 422 U.S. 490, 518 (1975).

14

In contrast, a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of a complaint" and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To be considered sufficient, a claim must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully," thus rendering it facially plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57 (2007)). Under Federal Rule of Civil Procedure 8(a)(2), "only 'a short and plain statement of the claim showing that the pleader is entitled to relief'" is required to meet this threshold. Erickson v. Pardus, 551 U.S. 89, 93 (2007). While "[s]pecific facts are not necessary," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Twombly, 550 U.S. at 555) (alteration in original); see also Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1227 (4th Cir. 1998) ("Even under the liberal standards of the Federal Rules of Civil Procedure, . . . a plaintiff 'must at least set forth enough details so as to provide defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery.'" (quoting Self Directed Placement Corp. v.

15

_Control Data Corp._, 908 F.2d 462, 466 (9th Cir. 1990))).

In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," _Erickson_, 551 U.S. at 94, and all reasonable inferences must be drawn in the plaintiff's favor, _Ibarra v. United States_, 120 F.3d 472, 474 (4th Cir. 1997). But while "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor," this "does not mean that the court can ignore a clear failure in the pleadings to allege any facts which set forth a claim." _Estate of Williams-Moore v. All. One Receivables Mgmt., Inc._, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citing _McNair v. Lend Lease Trucks, Inc._, 95 F.3d 325, 327 (4th Cir. 1996)). Mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." _Iqbal_, 556 U.S. at 678.

### 2. County Clerk Defendants' Motion to Dismiss

The County Clerk Defendants challenge the complaint on both Rule 12(b)(1) jurisdictional grounds and on Rule 12(b)(6) sufficiency grounds. The court will address each in turn, starting with the jurisdictional challenge. _See_ _Jones. v. Jones v. Am. Postal Workers Union_, 192 F.3d 417, 422 (4th Cir. 1999) (noting that questions of jurisdiction are "threshold issue[s]" that must be addressed "before addressing the merits" of a claim).

16

### a. Jurisdictional Challenges Under Rule 12(b)(1)

The County Clerk Defendants argue both that Woods lacks standing to proceed and that the official capacity claims are barred by Eleventh Amendment immunity.[7] (Doc. 14 at 7, 9.) The County Clerk Defendants contend that Woods lacks standing because he has failed to allege both an injury in fact and redressability. According to them, Woods has failed to allege an invasion of a legally protected interest because he has failed to show he has a constitutional right that has been violated, and he has similarly failed to show any concrete injury or damage resulting from the 14-day delay in filing his adoption petitions. (Id. at 8.) Relatedly, they argue that Woods has failed to show redressability, as his complaint seeks no prospective remedy and makes only improper claims for retrospective declaratory relief and claims for damages without alleging any basis for actual compensation as

---

[7] The Fourth Circuit has not conclusively established whether a dismissal based on Eleventh Amendment immunity is a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6). See Andrews v. Daw, 201 F.3d 521, 524–25 n.2 (4th Cir. 2000). On the one hand, the Fourth Circuit has acknowledged the Supreme Court's holding that sovereign immunity conferred by the Eleventh Amendment is a "jurisdictional bar." Hutto v. S.C. Ret. Sys., 773 F.3d 536, 542 (4th Cir. 2014) (quoting Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 73 (1996)). On the other hand, it has noted that Eleventh Amendment immunity can be waived unlike other matters of subject matter jurisdiction, and it has characterized it as an affirmative defense that defendants have the burden of demonstrating. Id. at 543. Here, the County Clerk Defendants characterize their Eleventh Amendment argument as jurisdictional, so the court will treat it as such. See Johnson v. N.C. Dep't of Health and Human Servs., 454 F. Supp. 2d 467, 471 (M.D.N.C. 2006).

required by § 1983.  (Id. at 8-9.)  While the County Clerk Defendants acknowledge that "nominal damages may satisfy the redressability requirement for standing," they note that Woods does not request such relief, thus failing to meet the redressability requirement.  (Id. at 9 (emphasis in original) (citing Uzuegbunam v. Preczewski, 141 S. Ct. 792, 801-02 (2021).)

Second, the County Clerk Defendants argue that the claims against each of them in their official capacity are barred by the Eleventh Amendment.  (Id.)  They maintain that any damages sought as to Defendant Reams, or her successor, fall squarely within the prohibition of the Eleventh Amendment because Woods is reaching for state funds without alleging waiver or congressional abrogation of sovereign immunity.  (Id. at 10.)  In addition, the County Clerk Defendants contend that the declaratory judgment claims against them are all barred because they seek a statement that retroactively recognizes past wrongdoing, which is prohibited, and not a judgment addressing an ongoing constitutional violation, which would be permitted under Ex parte Young, 209 U.S. 123, 159-60 (1908), and its progeny.  (Id. at 11-12.)  Thus, the County Clerk Defendants argue, the case should be dismissed for lack of jurisdiction.

As to standing, Woods argues that he has pled a violation of his constitutional right of access to the courts, which suffices as a legally-protectable interest, and has provided a complaint

18

that is at least sufficient to rest on a request for nominal damages. (Doc. 18 at 3.) He contends that the right of access to the courts encompasses the right to file a petition for adoption, which he alleges was denied him, thus satisfying the injury in fact requirement. (Id.) Moreover, he maintains that at a minimum, the possibility of nominal damages can support redressability for his complaint, as nominal damages are permitted by § 1983 and may be implied as available relief even if not specifically claimed. (Id. (citing Farrar v. Hobby, 506 U.S. 103, 112 (1992); Moore v. Liszewiski, 838 F.3d 877 (7th Cir. 2016)).

As to the Eleventh Amendment, Woods argues that he is suffering an ongoing constitutional violation, which is not immune from suit under Ex parte Young. (Id. at 4.) He asserts in his brief that his petitions for adoption have yet to be referred to a judge for decision[8] and the harm of refused access to the courts therefore continues. (Id. at 5-8.) Thus, Woods maintains that the relief he seeks is prospective in nature and thus not barred by the Eleventh Amendment. (Id.)

---

[8] Despite citing to paragraph 73 of the complaint for allegations of an ongoing constitutional violation, Woods's response brief contains assertions of improper post-filing misconduct that appear nowhere on the face of the complaint. (See Doc. 1.) The County Clerk Defendants argue that such assertions are not to be considered on the jurisdictional issue. (Doc. 23 at 5-7.) This is correct. While the court may consider evidence that does not appear on the face of the complaint when assessing its jurisdiction under 12(b)(1), Evans, 166 F.3d at 647, for reasons discussed infra, these statements are not evidence, and the court declines to consider them.

Beginning with the requirement of standing, a plaintiff must allege "'such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf'" for a case or controversy to be justiciable in federal court. White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005) (quoting Planned Parenthood of S.C. v. Rose, 361 F.3d 786, 789 (4th Cir. 2004)). This requirement is "an integral component of the case or controversy requirement." CGM, 664 F.3d at 52 (citation and internal quotation marks omitted). The party seeking to invoke the federal courts' jurisdiction has the burden of satisfying Article III's standing requirement. Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006). To meet that burden, a plaintiff must demonstrate three elements: (1) that he has suffered an injury in fact that is "concrete and particularized" and "actual or imminent"; (2) that the injury is fairly traceable to the challenged conduct; and (3) that a favorable decision is likely to redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

Notably, however, "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." Warth v. Seldin, 422 U.S. 490, 500 (1975) (citing Flast v. Cohen, 392 U.S. 83, 99 (1968)). Thus, when conducting a standing analysis, the court "assumes that the plaintiff's legal theory is

correct because, 'were that not the case, [the court] would effectively be deciding the merits under the guise of determining the plaintiff's standing.'" Woodhull Freedom Found. v. United States, 948 F.3d 363, 371 (D.C. Cir. 2020) (alteration in original) (quoting Info. Handling Servs., Inc. v. Def. Automated Printing Servs., 338 F.3d 1024 (D.C. Cir. 2003)); see also Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec., 507 F. Supp. 3d 228, 238 (D.D.C. 2020) (reciting the principle that standing assumes the plaintiff's legal theory); Dickten Masch Plastics, LLC v. Williams, 199 F. Supp. 3d 1207, 1220 (S.D. Iowa 2016) (assuming the plaintiff's legal theory of ERISA preemption for the purposes of analyzing standing); Dougherty v. Drew Univ., 534 F. Supp. 3d 363, 372-73 (D.N.J. 2021) (assuming the alleged contractual relationship between the plaintiff and the defendant university for the purposes of analyzing standing); NB ex rel. Peacock v. D.C., 682 F.3d 77, 82 (D.C. Cir. 2012) (accepting the plaintiff's theory of Medicaid benefits deprivation for the purposes of analyzing standing).

Here, Woods has plausibly alleged standing. As to injury in fact, no party disputes that Woods was denied the filing of his petitions for two weeks - that his petitions were not filed when he first presented them on February 3, 2023, and that they remained unfiled until February 17, 2023. The only dispute is whether the allegations amount to a constitutional violation. Although the

County Clerk Defendants point out several ways in which this claim for constitutional protection may be deficient, that conflates the inquiry with the separate merits analysis, which the court addresses _infra_.

Woods has similarly adequately pled redressability. While his request for declaratory relief is insufficient to satisfy redressability because it impermissibly seeks a retroactive remedy against state officials barred by the Eleventh Amendment (for reasons noted _infra_), his request for damages under § 1983 is seemingly broad enough to support redressability. (Doc. 1 at 20-21.) Woods need only plead an entitlement to damages as one who experienced a constitutional wrong. (Doc. 1.) The amount, whether nominal or more substantial, is of no moment. Although Woods would be better advised to include a request for nominal damages as part of his complaint, at least some federal courts have held that "it is not necessary to allege nominal damages" which may be granted on "proof of deprivation of a right to which the plaintiff was entitled." _Basista v. Weir_, 340 F.2d 74, 87 (3d Cir. 1965); _see also Cooper Health Sys. v. Maxis Health Sys._, No. CV 18-702 (RMB/AMD), 2021 WL 5905705, at *7 (D.N.J. Dec. 14, 2021) (acknowledging in dicta that "a broad prayer for relief can support a claim for nominal damages even where a party has (1) been unable to support a calculation of actual damages and (2) not explicitly requested nominal damages in its pleading"); _Allah v. Al-Hafeez_,

226 F.3d 247, 251 (3d Cir. 2000) (construing a pro se complaint to include claim for nominal damages where complaint sought only compensatory and punitive damages); <u>Oliver v. Keller</u>, 289 F.3d 623, 630 (9th Cir. 2002) (same); <u>Howard v. Int'l Molders & Allied Workers Union, AFL-CIO-CLC</u>, 779 F.2d 1546, 1553 (11th Cir. 1986) (quoting <u>Basista</u> and noting an entitlement to nominal damages where no actual damages are proven). Given that Woods makes both a generic claim for an undefined type of damages (Doc. 1 at 19) and prays the court for "any further relief as is necessary, just, and proper" (<u>id.</u> at 21), the court construes the complaint to include a request for nominal damages. Thus, Woods satisfies the standing requirements.

As for immunity, the Eleventh Amendment bars suits against states and any state instrumentality properly characterized as an "arm of the state." <u>Regents of the Univ. of Cal. v. Doe</u>, 519 U.S. 425, 429-30 (1997). District courts throughout North Carolina have long recognized county clerks and assistant clerks of North Carolina's Superior Courts as state officials that may qualify for Eleventh Immunity protections given their statutory designation and relationship to the state judiciary. <u>See Gabriel v. Forsyth Cnty. Clerk of Ct. Ms. Susan Frye Off. of 21st Jud. Dist. Ct.</u>, No. 1:18-CV-354, 2019 WL 2215853, at *2 (M.D.N.C. May 20, 2019), <u>aff'd sub nom.</u> <u>Gabriel v. Frye</u>, 814 F. App'x 785 (4th Cir. 2020) (dismissing official capacity 1983 claims brought against an

23

assistant clerk as barred by the Eleventh Amendment); <u>Alford v.</u> <u>Mecklenburg Cnty. Clerk of Superior Ct.</u>, No. 3:19-CV-156-MOC-DSC, 2019 WL 2881556, at *3-4 (W.D.N.C. Jul. 2, 2019) (finding official capacity 1983 claims brought against the Mecklenburg County Clerk of Superior Court and the Assistant Clerk barred by Eleventh Amendment); <u>Hinton v. Whittenton</u>, No. 5:23-CV-98-BO-BM, 2024 WL 1234948, at *3 (E.D.N.C. Mar. 22, 2024) (noting that North Carolina clerks of court are state officials where performing statutorily authorized judicial duties); <u>see also</u> N.C. Gen. Stat. § 7A-40 (vesting clerks with court power "by law in respect of special proceedings and the administration of guardianships and trusts"); N.C. Gen. Stat. § 7A-102(b) ("An assistant clerk is authorized to perform all duties and functions of the office of clerk of superior court, and any act of an assistant clerk is entitled to the same faith and credit as that of the clerk."); <u>Special Proceedings</u>, Durham Cnty. N.C., https://www.dconc.gov/county-departments/departments-a-e/clerk-of-superior-court (last visited June 6, 2024) (including adoptions as part of the special proceedings clerks of court handle by statute). Thus, Reams's successor and Thompson both enjoy Eleventh Amendment protections in their official capacity, subject to the limitations provided for in <u>Ex parte Young</u>.

<u>Ex parte Young</u> provides an exception to Eleventh Amendment immunity where suit is brought against state officials in their

24

official capacity, and "(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." Republic of Paraguay v. Allen, 134 F.3d 622, 627 (4th Cir. 1998) (citing Ex parte Young, 209 U.S. at 159-160). Woods argues that his claims survive on these grounds (Doc. 18 at 4-8), but this is not so. In his briefing, Woods attempts to recharacterize his constitutional challenge by alleging that the violation of his right of access is ongoing because his petitions have not been referred to a district court for contested adoption proceedings as they should have been. (Doc. 18 at 5-7, 12-15.) In addition, he claims that the declaratory relief sought prospectively seeks to preclude the Defendants from continuing their interference with the courts. (Id.) The problem is that none of these allegations or prayers for relief appears in the complaint. The complaint says nothing of any wrongdoing occurring after the original petitions were stamped and filed on February 17, 2023. (See Doc. 1.) Nor does the request for declaratory relief suggest an ongoing issue. (See id.) Instead, Woods specifically prays for the court to

> [d]eclare that the instruction given by Edmonds and Doe, agents of the Durham Department of Social Services, to Reams, a Durham County assistant clerk of court, between the dates of February 3, 2023, and February 15, 2023, regarding the filing of plaintiff's adoption petitions for minors KT and MT, and Reams' subsequent failure to file the petitions, was unlawful and unconstitutional.

(Id. at 20 (emphasis added).) The alleged wrongdoing that took

place during the two-week delay is not only the focus of Woods's complaint - it is the only wrongful conduct alleged. And correspondingly, the relief Woods seeks is exclusively retrospective in nature.

As the County Clerk Defendants point out, the court is limited to deciding this motion on the allegations appearing on the face of the well-pleaded complaint. See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 449 (4th Cir. 2011) (limiting its consideration of the facts to those that are contained within the pleadings). Those allegations may be supplemented factually on a Rule 12(b)(1) motion, but "[i]t is well-established that parties cannot amend their complaints through briefing." S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184-85 (4th Cir. 2013). So, while evidence that is developed to support facts beyond the pleadings may be considered in a jurisdictional inquiry, the assertions here are not presented as facts. On the plain language of the complaint, Woods seeks only retroactive relief to redress the state officials' alleged past wrongful conduct, and that is what the court must consider.

As a result, the claims against Reams's successor and Thompson in their official capacities are barred by the Eleventh Amendment. The court will therefore grant the County Clerk Defendants' motion to dismiss Woods's claims against them in their official capacities

26

for lack of subject matter jurisdiction.

### b. Sufficiency Challenges Under Rule 12(b)(6)

The County Clerk Defendants argue that Woods's complaint against Reams in her individual capacity, now against the Co-Administrators, fails to state a claim and thus should be dismissed. (Doc. 14 at 13.) First, they argue that Woods has not alleged a deprivation of a federally protected right on the ground that the constitutional right of access to the courts does not attach to the filing of an adoption petition. (Id. at 13-18.) At best, they argue, Woods has alleged a potential violation of state law, which is also dubious, as the complaint acknowledges the petitions lacked an original signature. (Id. at 15-16.) Second, they argue that Woods has failed to plead an injury that resulted from the delayed filing, which is "fatal to his claim" because constitutional right of access claims require a clear showing of specific injury. (Id. at 18-19.) Third, they contend that Reams is protected by quasi-judicial immunity in her role as an assistant clerk, shielding her from liability for any alleged constitutional violation that took place in the course of her judicial business. (Id. at 19-22.) Fourth and relatedly, they maintain that Reams would be entitled to qualified immunity for any constitutional violation because the constitutional right of access to the courts, even if it extends to this context, is not so clearly established as to avoid immunity. (Id. at 22-23.) Fifth and finally, they

27

argue that the court should refrain from intervening under the domestic relations abstention doctrine. (Id. at 23-24.)

Woods disputes each of these arguments. First, he argues that the right of constitutional access to the courts encompasses a cognizable action for denial of a civil petition in an adoption proceeding. (Doc. 18 at 8-12.) He denies that any federal "fundamental rights" limitation exists and that, even one did, the right to file an adoption petition would qualify because it implicates the right to associate with one's kin. (Id. at 8-10.) Moreover, he maintains, any claim that the petitions were statutorily deficient is pretextual, as the statute does not require a wet signature. (Id. at 11-12.) Second, Woods argues that he has alleged a judicially-cognizable injury, as the failure to file his adoption petitions has resulted in a failure to trigger the judicial procedures provided for in the case of a contested adoption.[9] (Id. at 12-15.) Third, he argues that Reams is not

_____

[9] Here, too, Woods presents an entirely different theory of the violation of his constitutional right of access to the courts and of the injury he sustained than the one he asserts in the complaint. While the facts in the complaint allege a past violation (see Doc. 1), Woods's response brief asserts that a violation that is ongoing (see Doc. 18 at 12-15). The theory of the violation matters, as there are different elements a plaintiff must prove for a past violation versus an ongoing violation. See Christopher v. Harbury, 536 U.S. 403, 412-416 (distinguishing between two types of constitutional right of access violations, those that "turn[] on a litigating opportunity yet to be gained" and those that allege "an opportunity already lost"). As the County Clerk Defendants are correct that "parties cannot amend their complaints through briefing," the court will disregard any new factual assertions and theory of the case predicated on those assertions presented in the briefing and

28

entitled to judicial immunity because she did not act at judicial direction or in a discretionary judicial function. (Id. at 15-18.) Fourth, he contends that the application of qualified immunity is not appropriate at this stage (id. at 18), and, even if it were, it would not apply because a constitutional right of access to the courts in the context of adoption petitions was manifestly apparent at the time of the violation (id. at 19-21). Fifth and finally, he asserts that the domestic relations abstention doctrine should not be applied here, as it has a narrow application to a small subset of diversity jurisdiction cases, and this action is founded on the court's federal question jurisdiction. (Id. at 21-22.)

While the parties spar on the complexities of these arguments, the court need not address them all, as it is apparent that the facts of the complaint fail to plausibly allege the elements of a constitutional violation. In other words, even assuming - without deciding - that there is a constitutional right in this context, that a claim against Reams for violating it can survive any immunity defenses, and that any claim should not be avoided by any abstention hurdle, Woods's complaint fails on simple Rule 12(b)(6) grounds.

---

focus only on the facts and theory apparent on the face of the well-pleaded complaint. (Doc. 23 at 2-3 (quoting S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013)).)

The Supreme Court defined the contours of constitutional right of access claims in Christopher v. Harbury, 536 U.S. 403 (2002). There, the Court laid out two types of cases: those that present ongoing barriers to accessing the courts, and those that challenge a barrier to accessing the courts that once existed but has since been removed. Id. at 412-414. As to the former, "the essence of the access claim is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs." Id. at 413. That is because "[t]he opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." Id. Suits of this nature include those where prisoners have been denied access to a law library, indigent plaintiffs are not offered a waiver of the fee for civil suits asserting family rights, or individuals are and continue to be denied access to counsel. Id. (collecting cases). By contrast, the other type covers "specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." Id. at 413-14. Examples include those where the denied access caused the loss of an opportunity to litigate or seek some form of relief, or those that led to an inadequate settlement of a meritorious case. Id. at 414

30

(collecting cases). Unlike the first type of case, "[t]hese cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." Id. "The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." Id.

Woods's complaint raises a backwards-looking challenge that falls into the latter category of cases. It alleges that his right of access to the courts was violated when the County Clerk Defendants declined for two weeks to file his petitions for adoption of K.T. and M.T. (Doc. 1 at 17-21). The complaint acknowledges that the denial of his petitions is not ongoing; the petitions were stamped and filed on February 17, 2023. (Id. ¶ 14.) Consequently, Woods seeks only damages and a declaratory judgment aimed at acknowledging that the two-week denial of his petitions was wrongful. (See id. at 17-21.) And although he asserts a refusal to refer his petitions in his briefing, as discussed supra, the court cannot consider such assertions on this record.

In a backwards-looking constitutional right of access claim, a plaintiff must show three elements: (1) that he has a "'nonfrivolous,' 'arguable' underlying claim" that could have stood properly before a court, (2) the official actions which

31

prohibited him from accessing the court in that underlying case, and (3) that he has suffered some irreparable harm in that there is "a remedy that may be awarded [by the court] as recompense but not otherwise available in some suit that may yet be brought." Harbury, 536 U.S. at 414-415; see also Murdock v. Thompson, No. 20-6278, 2022 WL 17352171, at *4 (4th Cir. Dec. 1, 2022) ("Generally, to prevail on [a backwards-looking access] claim, a plaintiff must establish (1) that he lost the opportunity to pursue a nonfrivolous, arguable underlying claim, (2) the official acts frustrating the litigation; and (3) that the relief he seeks is unobtainable in other suits." (internal quotations omitted)).[10]

The third element is of particular importance. The Supreme Court has counseled that "[t]here is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." Harbury, 536 U.S. at 415; see also Lewis v. Casey, 518 U.S. 343, 353 n.3 (1996) (emphasizing the importance of actual injury as also being related to the non-frivolousness requirement). Some courts interpret the injured remedy component as requiring litigants to show that an opportunity previously available to them

_____

[10] Unpublished opinions of the Fourth Circuit are not precedential but are cited for their persuasive, but not controlling, authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

in litigation is now "completely foreclosed" as a result of the alleged interference.  See Harbury, 536 U.S. at 412 (quoting Harbury v. Deutch, 233 F.3d 596, 600-01 (D.C. Cir. 2000)); Broudy v. Mather, 460 F.3d 106, 120 (D.C. Cir. 2006).  On any interpretation, what is clear is that a constitutional right of access claim arises only in the narrow circumstance where a plaintiff has lost a remedy that cannot be regained or his circumstances cannot be otherwise rectified except by bringing the constitutional claim.  See Harbury, 536 U.S. at 414-415.  Moreover, any alleged "lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  Id. at 415 (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513-515 (2002)).

As the County Clerk Defendants point out, Woods has failed to allege a cognizable injury or lost remedy.  He has not alleged that his chance to adopt K.T. and M.T. was foreclosed by the two-week delay in filing or that he suffered any other irreparable loss of judicial recourse.  His petitions have been stamped and filed in the same manner as they would have on February 3.  Moreover, and importantly, Woods makes no claim for any relief that is not available in other suits.  On the contrary, the complaint makes clear that Woods successfully availed himself of a writ of mandamus through the state courts to direct the County Clerk Defendants to file his petitions.  (Doc. 1 ¶¶ 11-14.)  Thus,

without alleging some injury in the form of a remedy that was lost or an irreparable circumstance due to the brief delay, Woods's complaint fails to raise a cognizable constitutional right of access claim.

The court therefore will grant the County Clerk Defendants' Rule 12(b)(6) motion to dismiss the complaint against the Co-Administrators, who now represent Reams in her individual capacity.

### 3. Durham County Defendants' Motion to Dismiss

The Durham County Defendants' Rule 12(b)(6) motion is substantially similar to that of the County Clerk Defendants. They argue that the constitutional right of access does not extend to the denial of filing an adoption petition (Doc. 12 at 7-9); that the alleged two-week delay does not qualify as an actual injury as required for a constitutional right of access claim (id. at 9-10); that the complaint is self-defeating because it acknowledges that the petitions Woods was trying to submit were deficient because they lacked a wet signature (id. at 10-11); that there is no proximate cause against them because other parties prevented the filing of the petitions (id. at 11-12); that the official capacity claims fail for lack of an allegation of a policy, custom, or practice attributable to the Durham County DSS (id. 12-14); and that the individual capacity claims are barred by qualified immunity (id. at 15-17).

34

Woods makes substantially the same arguments in his response briefing as he did against the County Clerk Defendants. He argues that the right of access to the courts extends to the ability to file petitions for adoption (Doc. 17 at 8-10); that he has alleged a sufficient injury, again relying on a theory of the case and assertions that are not alleged in the complaint (id. at 10-14); that any alleged "deficiencies" in the petitions acknowledged in the complaint were pretextual (id. at 14-15); that the Durham County Defendants colluded with the County Clerk Defendants, satisfying the proximate cause requirement (id. at 16); that there are facts sufficient to support a policy or custom for the official capacity claims (id. at 16-19);[11] and that the Durham County Defendants are not entitled to qualified immunity for their individual capacity claims (id. at 19-23).

Woods's claims fail for the same reasons as those articulated as to Reams and the County Clerk Defendants. That is, the court need not address all of these arguments because the complaint's failure to allege facts to support a plausible claim that Woods suffered a constitutional harm are dispositive. Consequently, the Durham County Defendants' motion to dismiss will be granted for failure to state a claim upon which relief can be granted.

---

[11] Here, too, Woods attempts to incorporate facts that do not appear on the face of the complaint. The court similarly declines to consider them here.

\*\*\*

In sum, each of Woods's claims fails to survive a motion to dismiss. The claims against Reams (or her successor) and Thompson in their official capacity fail because those individuals are immune from suit under the Eleventh Amendment, thus depriving the court of jurisdiction. Woods's claims against Reams in her individual capacity, Cveticanin in her official capacity, and Edmonds in both her individual and official capacities fail because Woods's complaint does not plausibly allege facts that support the elements of a constitutional right of access claim. The Defendants' motions to dismiss will therefore be granted in full.

In light of Woods's assertions in his briefing that some ongoing delay continues to exist, the court would be remiss not to advise Woods that, if true, his remedy, if any, lies with the North Carolina state courts. See Snyder v. Nolen, 380 F.3d 279, 292 (7th Cir. 2004) (Easterbrook, J., concurring in part) (clarifying that "errors of state law differ from offenses against the Constitution" and noting that having "opportunities to correct mistakes before a suit reaches its conclusion [in state court] means that there is no constitutional problem in the first place"). Woods has already demonstrated that he successfully invoked the jurisdiction of the North Carolina courts in pursuit of mandamus relief to overcome the two-week delay, and there is no reason to believe, nor does Woods allege, that he cannot do so again if

36

necessary. Id. (noting that only if a plaintiff is prevented from seeking such judicial relief would there be a plausible claim that the litigant lacked access to the courts). If Woods's assertions that his petitions have yet to be referred to a district court judge are true, a federal court action would be in the "wrong judicial system, seeking the wrong relief." Id. Moreover, the court has avoided resolving many other defenses raised by the Defendants here, so Woods should not conclude that the court has determined that it would exercise jurisdiction over any claim for future relief in any event. This case is quintessentially a domestic matter resting on specific North Carolina law applicable to adoptions, which the North Carolina courts are best-suited to resolve.

## III. CONCLUSION

For the reasons stated,

IT IS ORDERED that Woods's motion to substitute parties for Defendant Reams (Doc. 25) is GRANTED, and Alexander Stevenson Reams II and Alexandria Stephanie Reams are substituted for Reams as the proper Defendants for any individual capacity claim pursuant to Federal Rule of Civil Procedure 25(a), and Reams's successor as Durham County Assistant Clerk of Court is substituted for any official capacity claims pursuant to Rule 25(d).

IT IS FURTHER ORDERED that Woods's motion to strike (Doc. 26) is DENIED.

IT IS FURTHER ORDERED that the County Clerk Defendants' motion to dismiss (Doc. 13) is GRANTED, and the claims against Thompson and Reams's successor in their official capacity are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and the claims against the Co-Administrators representing Reams in her individual capacity are DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to Rule 12(b)(6).

IT IS FURTHER ORDERED that the Durham County Defendants' motion to dismiss for failure to state a claim (Doc. 11) is GRANTED, and Woods's individual and official capacity claims against Defendants Cveticanin and Edmonds are DISMISSED WITHOUT PREJUDICE.

/s/    Thomas D. Schroeder
United States District Judge

June 21, 2024